# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| RANDALL McCASLAND,<br>**Plaintiff** | ) | |
| | ) | |
| | ) | **Civil Action No. 3:25-cv-00385** |
| v. | ) | **Judge Crenshaw/Frensley** |
| | ) | |
| FRANK BISIGNANO, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment Based on the Administrative Record. Docket No. 10. Plaintiff has filed an accompanying Memorandum. Docket No. 10-1. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 12.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment Based on the Administrative Record (Docket No. 10) be **GRANTED** and that this action be **REMANDED**.

## I.     INTRODUCTION

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on October 13, 2021, alleging that she had been disabled since April 1, 2020, due to short-term memory loss, dementia, bipolar disorder, doctor's orders not to drive, and hypothyroidism. *See, e.g.,* Docket No. 9 ("TR"), p. 49. Plaintiff died on November 27, 2021, and her spouse, Randall McCasland, submitted a substitution of party. TR 75-77. Plaintiff's application was denied both initially (TR

54) and upon reconsideration (TR 67). Plaintiff subsequently requested (TR 83-84) and received (TR 27-48) a hearing. Plaintiff's hearing was conducted on August 17, 2023, by Administrative Law Judge ("ALJ") William Taylor. TR 27. Mr. McCasland—current Plaintiff—and vocational expert ("VE"), Chelsea Brown, appeared by phone and testified. *Id.*

On April 2, 2024, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 12-25. Specifically, the ALJ made the following findings of fact:

1. The claimant met the insured status requirements of the Social Security Act through June 30, 2025.

2. The claimant did not engage in substantial gainful activity from April 1, 2020, the alleged onset date through her date of death of November 27, 2021 (20 CFR 404.1571 *et seq.*).

3. The claimant had the following severe impairments: bipolar disorder with memory deficits; anxiety (20 CFR 404.1520(c)).

4. The claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has [*sic*] the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: could have understood, remembered, and carried out job instructions regarding simple, routine, repetitive job duties and could have performed simple, routine, repetitive work tasks; could have tolerated occasional interaction with supervisors and co-workers and work with objects and not with the general public; could have maintained attention, concentration, and pace; could have been punctual and worked within a set schedule; could have used judgement [*sic*] to make work decisions; occasionally adjusted to changes in a work setting and job duties.

6. The claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 20, 1967 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant had at least a high school education (20 CFR 404.1564).

2

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant was "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2020, through the date of death of November 27, 2021 (20 CFR 404.1520(g)).

TR 17-19, 21-23.

On April 9, 2024, Plaintiff timely filed a request for review of the hearing decision. TR 145. On February 25, 2025, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.     REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Ms. McCasland's medical records from January 1, 2016, to November 26, 2021, were requested from Centerstone but were not received. TR 205-11. The ALJ issued a subpoena for records from Centerstone on November 30, 2023, and the records were again not released. TR 141-43, 345-51. The ALJ requested assistance from the Office of Hearings Operations regional office, which advised him to issue a decision with the medical evidence in the record. TR 15. Without Ms. McCasland's medical records from Centerstone, the record is incomplete.

## III.     CONCLUSIONS OF LAW

3

## A.      Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Id.* "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Nevertheless, it is the ALJ's duty to develop the record so that this Court can determine whether the residual functional capacity was supported by substantial evidence. *Brazile v. Sec'y of Health & Hum. Servs.*, No. 92-4275, 1993 U.S. App. LEXIS 18082, 1993 WL 262466, at *3 (6th Cir. July 8, 1993), *citing Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *see also Cook v. Chater*, No. 95-2254, 1996 U.S. App. LEXIS 19082, 1996 WL 338525, at *2 (6th Cir. June 18, 1996).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F. 3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co.*, 305 U.S. at 229; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*,

4

745 F. 2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F. 3d at 389, *citing Key v. Callahan*, 109 F. 3d 270, 273 (6th Cir. 1997).

If the Commissioner did not consider the record as a whole; however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F. 2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F. 2d 139, 145 (6th Cir. 1980). Moreover, an ALJ's decision lacks the support of substantial evidence if the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller v. Comm'r of Soc. Sec.*, 811 F. 3d 825, 833 (6th Cir. 2016), *citing Gentry v. Comm'r of Soc. Sec.*, 741 F. 3d 708, 722 (6th Cir. 2014) (internal citations omitted); *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011); *Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); *accord Goppert v. Berryhill*, No. 3:16-cv-02739, 2018 WL 513435, at *4 (M.D. Tenn. Jan. 23, 2018) (Report and Recommendation adopted Mar. 1, 2018, 2018 WL 138533).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F. 2d 361, 374 (6th Cir. 1965).

**B.      Proceedings At The Administrative Level**

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and

work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

(1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[1] If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as the grid, but only if the claimant

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

is not significantly limited by a non-exertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F. 2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F. 2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F. 2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and non-exertional, severe and nonsevere. *See* 42 U.S.C.§ 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ committed reversible error when he: (1) failed to properly consider the evidence in assessing Ms. McCasland's residual functional capacity; (2) failed to properly weigh the evidence related to her disabling symptoms, and (3) relied on the testimony of a vocational expert that may not accurately reflect Ms. McCasland's limitations. Docket No. 10-1, p. 7. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id*.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

7

Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F. 2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934-35 (6th Cir. 2018), *citing Faucher v. Sec'y of Health & Human Servs.*, 17 F. 3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F. 3d 316, 318 (6th Cir. 1994).

### 1. Determining Residual Functional Capacity ("RFC")

Plaintiff maintains that the ALJ improperly declined to incorporate all the limitations provided by Dr. Tramontana in determining Ms. McCasland's RFC. Docket No. 10-1, p. 9. Plaintiff contends that the ALJ's finding that Ms. McCasland could perform simple, routine, repetitive work tasks does not account for the limitations in verbal recall that Dr. Tramontana assessed. *Id.* Plaintiff also argues that Dr. Tramontana assessed significant deficits and problems with Ms. McCasland's concentration, which is inconsistent with the ALJ's finding that she could maintain attention, concentration, and pace. *Id.* Plaintiff highlights further mental limitations supported by the limited evidence in the record. *Id.* at 10. Finally, Plaintiff contends that the ALJ substituted his opinion for that of a medical professional and that no medical opinion in the record corresponds with the ALJ's finding. *Id.* at 11.

Defendant responds that the ALJ properly found that Ms. McCasland retained the RFC to perform a reduced range of simple, routine, and repetitive work with occasional interaction with

co-workers and supervisors, but no work with the general public. Docket No. 12, p. 4. Defendant contends that the ALJ articulated appropriate bases for the weight given to the evidence of record to determine Ms. McCasland's RFC. *Id.* Defendant argues that the ALJ considered the disability claim, but it was not supported by the record based on opinion evidence, Ms. McCasland's medical treatment, and the other medical evidence in the record. *Id.* at 3. Defendant contends that after considering the entire record, the ALJ found that Ms. McCasland had severe impairments of bipolar disorder with memory deficits and anxiety. *Id.* Specifically, Defendant contends that the ALJ did not find an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR §404, Subpt. P, App. 2 ' 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR§ 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the RFC for a full range of work at all exertional levels but with the following non-exertional limitations: could have understood, remembered, and carried out job instructions regarding simple, routine, repetitive job duties and could have performed simple, routine, repetitive work tasks; could have tolerated occasional interaction with supervisors and co-workers and work with objects and not with the

general public; could have maintained attention, concentration, and pace; could have been punctual

and worked within a set schedule; could have used judgment to make work decisions; occasionally

adjusted to changes in a work setting and job duties. TR 19. The ALJ explained:

> In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c. In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

> In September 2018, VUMC treatment notes indicated the claimant reported cognitive difficulties, memory decline, trouble expressing her thoughts, mixing up her words, pacing, and being easily distracted. It was noted she was taking psychiatric medication from Centerstone (1F). In April 2021, DMA indicated the claimant was doing well on Lithium for bipolar disorder. It was noted her bipolar disorder had associated urinary frequency. However, the next month, she reported to DMA with concerns about the side effects of Lithium. She reported itchy skin all over her body along with muscle weakness in her legs/ arms, which she felt were caused by Lithium (2F).

> On November 21, 2021, the claimant presented to the emergency room (ER) at Centennial Medical Center with mania and increased anxiety over the past few weeks. She stated she been [*sic*] recently admitted to the Parthenon about 2 months prior for similar symptoms. She stated that during her stay, she was taken off Xanax. She stated she was off of it for several weeks before recently restarting it via her psychiatrist at Centerstone. She stated that she had not been on it long enough to see any benefit and reported she was anxious. She denied suicidal ideations. She was told she could increase her Xanax for the next few days but would need to

10

follow-up with Centerstone, as she had just been restarted on Xanax on November 6 (4F). The claimant passed away November 27, 2021. It was indicated on her death certificate that she was found in her home wedged between the mattress and foot board of the bed and that positional asphyxia was the immediate cause of death (3F).

As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows: The prior administrative medical findings indicated there was insufficient evidence to offer a medical opinion. Thus, since no medical opinion was offered, this was not afforded any degree of persuasiveness (1A,4A).

In September 2018, the claimant underwent a neuropsychological evaluation with Dr. Michael Tramontana who indicated she sometimes became frustrated and needed encouragement to not give up. He described her as tense, restless, and somewhat scattered in providing her history. Dr. Tramontana indicated her performance on some of the testing items was slow and inconsistent with her reaction times, indicative of mildly slow processing speed. She struggled with memory performance and had poor to extremely poor recall and memory performance. Dr. Tramontana found she exhibited significant deficits in various aspects of memory. He indicated she also had emotional factors present, as she reported diminished enjoyment, nervousness, and difficulty relaxing. He reported that her psychological insight was likely limited. Dr. Tramontana indicated she had problems concentrating. He found significant memory decline involving verbal recall. Dr. Tramontana's evaluation was supported by his objective testing results and his own face-to-face observations of the claimant. Thus, his evaluation findings were persuasive (1F).

The claimant's husband, Randall McCasland testified that he was married to the claimant for 6 [*sic*] years and 8 months and they lived together. He indicated that she was on several psychiatric medications, including Xanax. He testified that the day after Thanksgiving 2021, they both went to be[d] in separate rooms. He stated that when he got up the next morning around 8 a.m., she did not get up like she normally did. He stated he thought she was just sleeping in. He said around 10 a.m. [*sic*], he went into her room and found her in between the mattress and footboard of the bed. He stated she was cold and had started to change color. He testified that he was unsure if her medications had anything to do with her death.

While the claimant had residual limitation that precluded a full range of activities and tasks, the medical evidence available demonstrated that she remained capable of performing work within the above residual functional capacity on a regular sustained basis prior to her death. The medical evidence failed to show symptoms of the frequency and/ or severity to preclude all work. After careful consideration

of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the medical opinions and evidence discussed above.

TR 19-21.

In so finding, the ALJ considered Ms. McCasland's Neuropsychological Evaluation

Report. TR 231-34. Specifically, the ALJ stated:

In September 2018, VUMC treatment notes indicated the claimant reported cognitive difficulties, memory decline, trouble expressing her thoughts, mixing up her words, pacing, and being easily distracted. It was noted she was taking psychiatric medication from Centerstone (1F).

…

In September 2018, the claimant underwent a neuropsychological evaluation with Dr. Michael Tramontana who indicated she sometimes became frustrated and needed encouragement to not give up. He described her as tense, restless, and somewhat scattered in providing her history. Dr. Tramontana indicated her performance on some of the testing items was slow and inconsistent with her reaction times, indicative of mildly slow processing speed. She struggled with memory performance and had poor to extremely poor recall and memory performance. Dr. Tramontana found she exhibited significant deficits in various aspects of memory. He indicated she also had emotional factors present, as she reported diminished enjoyment, nervousness, and difficulty relaxing. He reported that her psychological insight was likely limited. Dr. Tramontana indicated she had problems concentrating. He found significant memory decline involving verbal recall. Dr. Tramontana's evaluation was supported by his objective testing results and his own face-to-face observations of the claimant. Thus, his evaluation findings were persuasive (1F).

TR 20-21, *see* 231-33.

The ALJ also considered Dickson Medical Associates Report, stating:

In April 2021, DMA indicated the claimant was doing well on Lithium for bipolar disorder. It was noted her bipolar disorder had associated urinary frequency. However, the next month, she reported to DMA with concerns about the side effects of Lithium. She reported itchy skin all over her body along with muscle weakness in her legs/ arms, which she felt were caused by Lithium (2F).

TR 20, *see* 248.

The ALJ also considered Centennial Medical Center records, stating:

On November 21, 2021, the claimant presented to the emergency room (ER) at Centennial Medical Center with mania and increased anxiety over the past few weeks. She stated she been [*sic*] recently admitted to the Parthenon about 2 months prior for similar symptoms. She stated that during her stay, she was taken off Xanax. She stated she was off of it for several weeks before recently restarting it via her psychiatrist at Centerstone. She stated that she had not been on it long enough to see any benefit and reported she was anxious. She denied suicidal ideations. She was told she could increase her Xanax for the next few days but would need to follow-up with Centerstone, as she had just been restarted on Xanax on November 6 (4F).

TR 20, *see* 312.

The ALJ also considered Ms. McCasland's Certificate of Death, stating:

The claimant passed away November 27, 2021. It was indicated on her death certificate that she was found in her home wedged between the mattress and foot board of the bed and that positional asphyxia was the immediate cause of death (3F).

TR 20, *see* 300.

The ALJ also considered prior administrative medical findings, stating:

As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows: The prior administrative medical findings indicated there was insufficient evidence to offer a medical opinion. Thus, since no medical opinion was offered, this was not afforded any degree of persuasiveness (1A,4A).

TR 20, *see* 49-53, 67.

As has been demonstrated, the ALJ evaluated the medical and testimonial evidence of record, and ultimately determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, with additional non-exertional limitations. TR 19. While the ALJ evaluated the evidence in the record in reaching this RFC determination, without the records from

Centerstone, the decision is not based on all the relevant evidence, as the ALJ recognized when he asked the Office of Hearings Operations "for assistance with enforcing the subpoena" to Centerstone. TR 15. As the Sixth Circuit has stated, it is the duty of the ALJ to develop the record. *Brazile*, 1993 U.S. App. LEXIS 18082, 1993 WL 262466, at *3. Here, the record lacked material—Centerstone records—that was exceptionally important because Ms. McCasland is deceased and could not testify.

Additionally, when determining RFC, the ALJ must explain how he or she evaluated the "persuasiveness" of medical opinions by considering five factors: supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion." 20 CFR §§ 404.1520c(c)(1)-(5). The ALJ did not explain how the two most important factors, supportability and consistency, or any other factors, supported the RFC finding. At a minimum, the ALJ needs to assess supportability and consistency, yet neither was explained in the ALJ's opinion.

### 2. Evaluating Subjective Complaints of Pain and Disabling Symptoms

Plaintiff contends that in finding her subjective complaints not fully credible, the ALJ failed to appropriately address her subjective complaints of pain and disabling symptoms. Docket No. 10-1, p. 13. Plaintiff maintains that when the evaluation of a claimant's symptoms is left to the ALJ's sound discretion, those decisions must be reasonable and supported by evidence in the record. *Id.* Plaintiff further supports this by stating that a single conclusory statement that the ALJ considered his or her symptoms is insufficient, and that the determination must contain specific reasons for the weight given to the symptoms. *Id.* Plaintiff contends that the ALJ's analysis lacked the required specificity for this Court to conduct a meaningful review of the decision. *Id.* at 14.

Defendant responds that the ALJ properly found that Ms. McCasland's disabling

14

symptoms were not supported by the record. Docket No. 12, p. 3. Defendant contends that the ALJ properly considered the medical opinions and prior administrative medical findings when evaluating the RFC and subjective allegations. *Id.* at 5. Defendant asserts that Dr. Tramontana's evaluation occurred 19 months prior to the alleged onset date, when Ms. McCasland was working, so the limitations could not have been disabling. *Id.* Defendant also notes that the ALJ was unable to assess Ms. McCasland's entire medical history because of Centerstone's refusal to release medical records, so the ALJ could not have found Ms. McCasland disabled from the evidence. *Id.* at 9. Defendant contends that before Ms. McCasland passed away, her appearance and level of functioning were inconsistent with a disabling mental impairment. *Id.* at 10.

"According to 42 U.S.C. § 423(d)(5)(A), subjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'" *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 403 (6th Cir. 2018), *quoting Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The Court must first "examine whether there is objective medical evidence of an underlying medical condition." *Buxton*, 246 F.3d at 773, *quoting Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (internal quotation marks omitted). "If there is, we then examine: (1) whether this evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). Moreover, "[a]llegations of pain . . . do not constitute a disability, unless the pain is of such a debilitating degree that it prevents an individual from participating in substantial gainful employment." *Bradley v. Sec'y of Health &*

*Human Servs.*, 862 F. 2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency, and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage, and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F. 3d 1027, 1039 (6th Cir. 1994)*, construing* 20 CFR § 404.1529(c)(2). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Comm'r of Soc. Sec.,* 127 F. 3d 525, 531 (6th Cir. 1997); *Blacha v. Sec'y of Health & Human Servs.*, 927 F. 2d 228, 230 (6th Cir. 1990); and *Kirk v. Sec'y of Health & Human Servs.,* 667 F. 2d 524, 538 (6th Cir. 1981).

The ALJ in the case at bar ultimately found that Ms. McCasland's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation. TR 19. The ALJ explained his rationale for so finding as follows:

> The severity of the claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned considered whether the "paragraph B" criteria were satisfied. To satisfy the "paragraph B" criteria, the mental impairments must have resulted in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
> In understanding, remembering, or applying information, the claimant had a moderate limitation. In 2018, Vanderbilt University Medical Center (VUMC) treatment notes indicated she reported cognitive difficulties and memory decline (1F). She reported she had an associate degree (1F,3F). During a neuropsychological evaluation, she struggled with memory performance and was found to have significant memory decline (1F). At the hearing, the claimant's husband, Mr. McCasland testified she had a hard time remembering how to work

16

her computer.

In interacting with others and concentrating, persisting, or maintaining pace, the claimant had a moderate limitation. In 2018, VUMC treatment notes indicated the claimant reported trouble expressing her thoughts, with mixing up her words, pacing, and being easily distracted. She was taking psychiatric medications. During a neuropsychological evaluation, she sometimes became frustrated and needed encouragement to not give up. She was described her [*sic*] as tense, restless, and somewhat scattered in providing her history. She reported diminished enjoyment, nervousness, and difficulty relaxing (1F). One week prior to her death, she presented to the emergency room (ER) with complaints of anxiety for the past few weeks (7F).

As for adapting or managing oneself, the claimant had a moderate limitation. Mr. McCasland testified she lost her job. He stated the claimant told him her boss noticed she had a hard time functioning at work. Mr. McCasland testified he also noticed changes in her functioning at home. He reported he found the door to their home locked with the key still in it. He stated she also got lost driving twice while driving [*sic*] and was not cooking as much as she used to.

Because the claimant's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria were not satisfied.

TR 18-19.

As can be seen, the ALJ's decision specifically addressed in detail the medical evidence, Plaintiff's testimony, and Ms. McCasland's subjective claims. TR 18-19. However, the missing records from Centerstone are needed for a comprehensive review of the evidence, especially because Ms. McCasland is unable to testify.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; *Kirk,* 667 F.2d at 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531, *citing Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence.

*See Walters*, 127 F. 3d at 531, *citing Bradley,* 862 F. 2d at 1227; *cf King v. Heckler*, 742 F. 2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human Servs.*, 823 F. 2d 918, 921 (6th Cir. 1987). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F. 3d at 1036), and the reasons must be supported by the record. S*ee King*, 742 F. 2d at 975. Because the ALJ did not clearly explain the reasons for rejecting the testimony and a large portion of the medical evidence from the relevant period is missing from the record, great deference cannot be afforded to the ALJ.

As discussed above, after assessing all available medical and testimonial evidence, the ALJ ultimately determined that Ms. McCasland did not have an impairment or combination of impairments that medically equaled the severity of any listed impairment. TR 18. In making this determination, the ALJ generally stated that he assessed the medical records, that his findings are supported by substantial evidence, and that the decision not to accord full credibility to Plaintiff's allegations was proper. The ALJ's explanation of findings is inconsistent with the 6th Circuit standard of discounting Plaintiff's subjective allegations to come to an unfavorable decision, since he did not explicitly state his reasons for doing so. The Centerstone records are vital to determining Ms. McCasland's disability, particularly because she is deceased and cannot testify.

### 3.  Alleged Error in Hypothetical Given to Vocational Expert

Plaintiff contends that the ALJ can only rely on a VE's testimony that a claimant can perform certain jobs when the hypothetical is accurate. Docket No. 10-1, p. 14. Plaintiff maintains that the hypothetical contained a typographical error, so it is unclear if the ALJ proffered a hypothetical that matches the RFC finding. *Id.* at 15. Plaintiff argues that the typographical error prevents this Court from determining whether the ALJ's decision was supported by substantial evidence. *Id.*

Defendant responds that the alleged error does not prevent this Court from reviewing the ALJ's decision for substantial evidence because it was most likely a transcription error only. Docket No. 12, p. 11-12. Defendant maintains that even if it was not solely a transcription error, it is reasonable to assume the VE understood "work objections" to mean "work objects" because the Dictionary of Occupational Titles specifically lists occupations that deal with objects, not people. *Id.* at 12. Additionally, Defendant contends that the ALJ incorporated the supported limitations into the RFC and the corresponding hypothetical question, so the ALJ's decision was supported by substantial evidence. *Id.* at 11.

An ALJ may rely on the testimony of a VE in response to a hypothetical question as long as the hypothetical question accurately represents the claimant's credible limitations. See *Varley v. Sec'y of Health, Ed. & Welfare*, 820 F. 2d at 779, quoting *O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978).

In some cases, "procedural errors like defects in a hearing transcript may constitute good cause for remand in a Social Security appeal." *Doski v. Soc. Sec. Admin.*, No. 3:21-cv-00209, 2022 U.S. Dist. LEXIS 50822, 2022 WL 860441, at *1 (M.D. Tenn. Mar. 22, 2022). However, if the meaning of the missing or incorrect portion can be discerned, or if a thorough review is otherwise not prevented, then those portions will not warrant remand. *See, e.g., id.* ("Remand is not required where transcription errors do not preclude the court from conducting a thorough review of the record") (citation modified); *Bratton v. Astrue*, No. 2:06-0075, 2010 U.S. Dist. LEXIS 72752, 2010 WL 2901856, at *5 (M.D. Tenn. July 19, 2010) ("enough of the conversation between the ALJ and the VE exists to show that the VE properly considered Plaintiff's limitations and to support the ALJ's reliance on the bench assembler job").

In this case, the ALJ posed a hypothetical to the VE that may have contained a

typographical error, but that error ultimately would not have altered the VE's response because all of the limitations were correctly described. *See* TR 44-45. Moreover, the single error does not prevent a thorough review of the ALJ's reliance on the VE's testimony because "work objections" versus "work [with] objects" would not have directed the VE to another skill level in the Dictionary of Occupational Titles when stating other jobs Ms. McCasland could perform. *Id.* The VE was not confused by the ALJ's hypothetical, and there is no reason the potential misquote of "objections" instead of "with objects" could have caused a misunderstanding that would affect the VE's findings. The ALJ properly relied on the VE's testimony, but the Centerstone records are necessary to determine Ms. McCasland's disability.

## IV. RECOMMENDATION

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment Based on the Administrative Record (Docket No. 10) be **GRANTED** and that this action be **REMANDED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**